IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| WILLIAM SAVAGE | : |
| | : |
| v. | : |
| | : Civil Action No. CCB-06-2896 |
| HOWARD COUNTY DEPARTMENT | : |
| OF HOUSING AND COMMUNITY | : |
| DEVELOPMENT | : |

...o0o...

**MEMORANDUM**

Now pending before the court is a motion to dismiss the complaint or, in the alternative, for summary judgment filed by defendant Howard County, Maryland ("County") against plaintiff William Savage ("Savage"). Savage asserts claims related to his employment with, and termination from, the County's Department of Housing and Community Development ("Department"). First, Savage alleges that he was denied reasonable accommodation and was unlawfully terminated from his employment position with the County in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq*. Second, Savage, an African-American, alleges that he was unlawfully terminated because of his race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42. U.S.C. §§ 2000e *et seq*., and 42 U.S.C. § 1981. The motions have been briefed fully, and no hearing is necessary. For the reasons stated below, the defendant's motion will be granted

**BACKGROUND**

William Savage was employed as a Regulations Inspector by the Howard County, Department of Housing and Community Development from July 1, 2002, until his termination on September 22, 2005. (Def.'s Mem. at 2.) According to Savage, his work performance had

1

always been at least "satisfactory." (Pl.'s Opp. Mem. at 5.) Savage, however, received an overall rating of "Needs Improvement" in each of his three annual departmental performance reviews from his supervisor, Samuel Tucker, who had been responsible, at least in part, for hiring Savage. (Def.'s Mem. at 3, Exs. 3, 4, 5.)

In 2003, Savage's overall performance review was negatively affected by a thirty-day suspension for "an alleged incident of sexual harassment." (Pl.'s Opp. Mem. at 5-6.) Although the suspension was originally to have been two weeks, the Director of the Housing Department, Leonard Vaughan, "increased the suspension to one month because he didn't like Savage's attitude." (*Id.* at 6.) Although Savage's 2004 and 2005 reviews improved slightly, Savage alleges that Tucker had been instructed by Vaughan "to keep his rating lower than it should have been." (*Id.*) Savage argues that "other, white, similarly situated employees were not subjected to the same scrutiny or discipline that he was subjected to." (*Id.* at Ex. 6, Pl.'s Dec. at ¶ 10.)

On June 5, 2005, Savage tore his patellar tendon in his knee while playing basketball. (*Id.* at 2.) Savage underwent surgery on June 21, 2005, and was allegedly told by his doctor that he would be out of work for three months. (*Id.*) The County asserts that on August 3, 2005, personnel analyst Nan Shull contacted Savage in order to request medical evaluation forms from his treating physician concerning whether Savage could return to work and "perform [a] sedentary or restricted duty assignment." (Def.'s Mem. at 4.) Savage's doctor returned an incomplete evaluation on August 12, 2005, which indicated that Savage would not be able to work in any capacity. (Def.'s Mem. at 5.) However, when the physician eventually submitted the missing "Physical Function Assessment Form," he concluded that Savage "would be capable of returning to work to perform restricted duty assignments beginning on September 1, 2005,"

2

rather than the estimated September 22 date Savage originally suggested.  (*Id.*; Complaint at ¶ 17.)

Over the course of Savage's leave he exhausted his paid disability and annual leave benefits.  (Def.'s Mem. at 4.)  Savage successfully applied for additional paid leave benefits from the Disability Leave Bank, which is operated by County employees.  (*Id.*)  Savage does not dispute that, according to the County's Employee Manual, an employee receiving full pay benefits from the Leave Bank is prohibited from engaging in other gainful employment during his absence, unless he requests and receives the specific approval of his appointing authority to work another job.  (Def.'s Mem. at 4; *see also* Def.'s Reply Mem. at 3, ¶ 5.)  Instead, Savage asserts that both Tucker and Vaughan "knew that he was a real estate agent . . . [and] that [he] pursued this activity after working regular hours with the Department."  (Pl.'s Opp. Mem. at 6-7.)  Despite the County's assertion that Savage had engaged in his real estate business while receiving Disability Bank benefits (Def.'s Mem. at 6), Savage maintains that although he "reviewed real estate listings on [his] computer at home . . . [he] did not receive any compensation for any real estate activities during his absence from work in 2005."  (Pl.'s Opp. Mem. at 7.)

Twelve days after returning to work with restrictions on September 1, 2005, Savage was interviewed by Vaughan concerning his real estate business and "the honest extent of his physical activities during his absence from work."  (Def.'s Mem. at 6.)  The County had hired a surveillance firm, Inquest Incorporated, which had submitted a surveillance report to the County on September 7, 2005, indicating that "on dates when the Plaintiff could have been performing restricted duty work assignments for the County, the Plaintiff was able to drive a vehicle, visit

locations at which 'For Sale' signs were posted, and perform heavy manual labor, to include using hedge trimmers while standing on a ladder on August 31, 2005." (*Id.* at 5-6.)  Savage counters that he "was not showing a listing at" the time of the surveillance, but rather was opening a house for a friend, and did not receive compensation for any real estate transactions during his work absence.  (Pl.'s Opp. Mem. at Ex. 6, Pl.'s Dec. at ¶¶ 20-21.)  As to his apparent physical activity, Savage notes that "the videotape shows [him] walking with some difficulty," and that "it is also important to note that the surveillance occurred very close to Savage's return to work, and at a time when it is reasonable to assume that he would be attempting a return to his normal routine, albeit with difficulty." (*Id.* at 13.)

"Based upon the surveillance report, and the Plaintiff's response to his questions, Vaughan filed Charges of Dismissal" on September 14, 2005, alleging that Savage had "made false statements concerning [his] ability to work in either restricted or full duty assignments . . . accepted paid leave benefits to which [he] was not entitled," conducted real estate activities, and lied when asked about the extent of his physical activities.  (Def.'s Mem. at 6; *id.* at Ex. 11, Charges of Dismissal.)  A pre-termination hearing was held on September 22, 2005, after which Vaughan determined that the dismissal should proceed.  (Def.'s Mem. at 7.)  Savage subsequently appealed his dismissal to the Howard County Personnel Board, which upheld the termination.  (*Id*. at Ex. 16, Decision and Order.)

For the purposes of this motion, the County reserves its argument concerning the timeliness of Savage's filing pursuant to 42 U.S.C. § 2000e-5(1) (Def.'s Reply Mem. at 10 n.8), and instead argues that: (1) Savage is not "disabled" under the ADA, (2) has failed to provide any evidence that race discrimination represents an official County policy in contravention of §

1981, and (3) has failed to offer any evidence that his discharge was motivated by a discriminatory animus.

## STANDARD OF REVIEW

The Fourth Circuit has summarized the basic principles governing the resolution of Rule 12(b)(6) motions as follows:

> The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; "importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Accordingly, a Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *See id.* . . . We do note, however, that for purposes of Rule 12(b)(6), we are not required to accept as true the legal conclusions set forth in a plaintiff's complaint. *See District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir. 1979).

*Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). Exhibits attached to the pleadings are considered part of the complaint. *See* Fed. R. Civ. P. 10(c).

Where matters outside the pleadings are considered by the court, however, a defendant's motion to dismiss will be treated as one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(b), (c). Rule 56(c) provides that summary judgment:

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified this does not mean that any factual dispute will defeat the motion:

5

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## **ANALYSIS**

*Count 1: Discrimination Based on Disability*

In his complaint, Savage asserts that the County discriminated against him on the basis of his knee injury by wrongfully terminating and failing to accommodate him in violation of the ADA. (Complaint at ¶ 33.) More specifically, Savage appears to argue that by pressuring him to return to work before he was ready in August of 2005, the defendant failed to accommodate. (Pl.'s Opp. Mem. at 12.)

6

"[I]n order to come within the ADA's protected class, a plaintiff must first show that she is disabled within the meaning of the Act." *Pollard v. High's of Balt., Inc.*, 281 F.3d 462, 467 (4th Cir. 2002). For an individual to qualify as being disabled, the Act requires: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). As the Fourth Circuit noted in *Pollard*, 281 F.3d at 467-68:

> In order to demonstrate that an impairment is substantially limiting, an individual must show that she is significantly restricted in a major life activity. *See, e.g., Halperin v. Abacus Tech. Corp.,* 128 F.3d 191, 199 (4th Cir.1997); 29 C.F.R. § 1630.2(j)(1). And in determining whether an impairment is substantially limiting, courts may consider the "nature and severity of the impairment," the "duration or expected duration of the impairment," and the "permanent or long term impact" of the impairment. 29 C.F.R. § 1630.2(j)(2). These factors indicate that a temporary impairment, such as recuperation from surgery, will generally not qualify as a disability under the ADA. *See, e.g.,* 29 C.F.R. § 1630.2(j), app. at 353. An impairment simply cannot be a substantial limitation on a major life activity if it is expected to improve in a relatively short period of time.
>
> The Supreme Court's unanimous opinion in *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184 (2002), supports this conclusion. In *Toyota,* the Court stated that the ADA's "substantially limits" requirement indicates that an impairment must interfere with a major life activity "'considerabl[y]' or 'to a large degree.'" 534 U.S. at 185. And the Court stressed that an "impairment's impact must also be permanent or long-term." *Id.*

The *Pollard* court further recognized, however, that the determination of whether a specific injury is a disability under the ADA must be made on a case-by-case basis. *Id.* at 468. The court considered three factors, including: (1) the severity of the impairment, (2) the expected duration of the impairment, and (3) the likelihood of recovery from the impairment. *Id.* at 469. The court ultimately found that a back injury that resulted in surgery and a nine-month work absence was not a disability under the ADA since the temporary nature of the injury indicated a lack of severity, the impairment was not expected to be permanent or long-term, and the plaintiff

7

was expected to make a full recovery.  *Id.*

Here, Savage's knee injury similarly falls under the category of a temporary injury not covered under the ADA as a disability.  First, while not underestimating Savage's concern for his well-being, the court finds that the temporary nature of his injury and likelihood of recovery cuts against the impairment rising to the level of severity required before an injury can be deemed a disability under the Act.  Savage's Complaint discloses that his injury was of a temporary nature, and that he would need "approximately three (3) months" to recover. (Complaint at ¶ 17.)  Furthermore, Savage noted in response to a question concerning the permanence of his injury and current status of his injury in the "ADA Intake Questionnaire" filed with the EEOC that his disability was "temporary" and "has been improving."  (Pl.'s Supp. Opp. Mem. at Ex. 8, ADA Intake Questionnaire at 1.)  Second, Savage's positive medical evaluations, physical therapy progress, and exhibited physical ability to do lawn work demonstrate that his injury was not expected to be permanent or long-term.  (Pl.'s Opp. Mem. at Ex. 7; Def.'s Mem. at Ex. 10.)  Finally, Savage offers no reason to believe that he will not recover from his knee injury and surgery, especially in light of his documented improvement.  Therefore, as in *Pollard*, where the plaintiff missed nine months of work due to back surgery, Savage fails to establish that he is disabled under the ADA as a matter of law.

Savage relies on the case of *Desai v. Tire Kingdom, Inc.*, 944 F. Supp. 876 (M.D. Fla. 1996) for the proposition that a knee injury is a disability under the ADA.  This reliance, however, is misplaced.  In that case, the plaintiff sustained a knee injury that doctors allegedly described as "permanent."  *Id.* at 879.  The court recognized that numerous courts had found that a knee injury "is not an impairment that could qualify as limiting any major life activity to a

significant degree" as required by the ADA. *Id.* at 880. However, in performing the case-by-case analysis required by the Act, the *Desai* court noted the apparently "permanent" nature of the impairment and concluded that "more facts are necessary for this Court to make a determination as to whether Desai's knee injury substantially limits any major life activity." *Id.*

By contrast, Savage has acknowledged that his knee injury was of a temporary nature, and has failed to assert any permanent impairment that would substantially impact his major life activities.[1] Thus, Savage's argument concerning the *Desai* case is not compelling. Because the court has considered exhibits attached to the defendant's motion in reaching this determination, it will construe the motion as one for summary judgment. *See* Fed. R. Civ. P. 12(c). For the foregoing reasons, the defendant's motion for summary judgment will be granted as to the plaintiff's ADA claim.

*Count 2 and 3: Discrimination Based on Race*

In his complaint, Savage asserts a § 1981 and a Title VII claim alleging that the County discriminated against and terminated him because of his race. (Complaint at ¶¶ 42-44.) Savage did not, however, allege that race discrimination represents an official policy of the County as required in a § 1981 claim, even after the County noted this deficiency in its motion to dismiss. (Def.'s Reply Mem. at 12.) Furthermore, Savage has failed to offer any evidence that his discharge was motivated by a discriminatory animus.

---

[1] Savage asserts in a one-sentence paragraph, without more, that "[t]he major life activities of walking, standing and working are affected by [his] disability." (Pl.'s Opp. Mem. at 7.) A disability under the ADA, however, requires an impairment that "substantially limits" a major life activity, not one that merely "affects" life activities. Furthermore, the record is replete with evidence that Savage's knee was improving, as was demonstrated by his ability to climb a step-stool in order to use hedge trimmers. (Def.'s Mem. at Ex. 10, Surveillance Report at 6.)

Initially, § 1981 does not permit actions against a municipality based on *respondeat superior* liability. *See Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 738 (1989); *Talley v. Farrell*, 156 F. Supp. 2d 534, 540 (D. Md. 2001). Instead, a state actor will only be held liable for its employees' actions when those actions are "caused by a custom or policy" of the state actor. *Jett*, 491 U.S. at 736. Savage, however, has made no argument that there is a county-wide system of racial discrimination and has not asserted that Vaughan had final policymaking authority. *See Talley*, 156 F. Supp. 2d at 540. In fact, Savage failed to respond to the County's argument concerning this deficiency (Def.'s Reply Mem. at 12), and thus relies on what appears to be a *respondeat superior* theory of liability. (Complaint at ¶¶ 42-47.) Accordingly, Savage cannot state a claim under § 1981. *See Talley*, 156 F. Supp. 2d at 540; *Crowley v. Prince George's County, Maryland*, 890 F.2d 683, 687 (4th Cir. 1989) (concluding that "Prince George's County plainly cannot be held liable for the personnel decision of its police chief"). The motion to dismiss, therefore, will be granted as to the § 1981 claim in this count.[2]

Savage further alleges that he was terminated without proper cause based on his race in violation of Title VII. The defendant has submitted with his motion to dismiss several attachments that relate specifically to this claim. Because it has considered those materials, the court will treat the motion as one for summary judgment as it relates to Savage's termination. *See* Fed. R. Civ. P. 12(c). Savage was provided adequate notice by the defendant's submission, *see Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) ("When a party is aware that material outside

---

[2] Because the analytical framework for the Title VII and § 1981 claims is the same, *Gairola v. Virginia Dep't of Gen. Serv.*, 753 F.2d 1281, 1285-86 (4th Cir. 1985), even if Vaughan did in fact have final policymaking authority, the § 1981 claim would fail on summary judgment for the same reasons as will now be discussed concerning the Title VII claim.

the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment."), and did not file a Rule 56(f) affidavit specifying needed discovery, *see Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). Accordingly, the court may properly treat the motion as one for summary judgment. *See Talley,* 156 F. Supp. 2d at 541-42.

Because Savage offers no direct evidence of discrimination in his firing, the familiar *McDonnell-Douglas* proof scheme applies to this claim. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 278 (4th Cir. 2000.) That structure was clarified by the Supreme Court in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). First, the plaintiff must establish a *prima facie* case of racially motivated discharge. *Id.* at 142; *Carter v. Bell*, 33 F.3d 450, 458 (4th Cir. 1994). If he can do so, the burden shifts to the defendant to provide "a legitimate, nondiscriminatory reason" for the adverse action. *Reeves*, 530 U.S. at 142 (*quoting Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). The defendant's burden is one of production, not persuasion, and the court should not evaluate the credibility of the defendant's explanation. *See id.* Once the defendant satisfies its burden, "the *McDonnell Douglas* framework - with its presumptions and burdens - [disappears] and the sole remaining issue [is] discrimination *vel non*." *Id.* (internal citations and punctuation omitted). At that point, the plaintiff has the burden to prove that the reasons proffered by the defendant are pretextual and that he was the victim of retaliation. *Hawkins*, 203 F.3d at 278.

Though it is by no means clear, the court will assume for the purposes of resolving this

motion that Savage could make a *prima facie* case for wrongful termination.[3]  Thus, the burden shifts to the defendant to demonstrate "a legitimate, nondiscriminatory reason" for Savage's firing.  *See Talley*, 156 F. Supp. 2d at 542.  The County has met this burden by offering evidence that Savage had violated the County's Secondary Employment policy, had been warned about violating any additional County policies after having been previously suspended for sexual harassment, and had consistently received sub-par annual reviews.  (Def.'s Mem. at 14-15.)

Savage has offered no evidence to support his claim that the County's reasons for his termination were pretextual, other than asserting that he did not earn any income from his real estate business during the time in question.  Instead, Savage offers the bald assertion that "other, white, similarly situated employees were not subjected to the same scrutiny or discipline that he was subjected to." (Pl.'s Opp. Mem. at 14.)[4]  Savage, apparently, is relying on certain unspecified "disciplinary records that would be requested during discovery to support his claims." (*Id.*)

---

[3]According to the Fourth Circuit:

A *prima facie* case of racially motivated discharge consists of the following four elements: (1) plaintiff is a member of a protected class; (2) plaintiff was qualified for the job and performed the job satisfactorily; (3) in spite of plaintiff's qualifications and performance, plaintiff was demoted and ultimately discharged; and (4) the position remained open to similarly qualified applicants after plaintiff's dismissal.

*Carter*, 33 F.3d at 458-59.

[4] It is of note that Tucker and Vaughan, both of whom are African-American and were responsible, at least in part, for hiring Savage, are accused of discriminating against Savage on the basis of race. (Def.'s Mem. at 15.)  It appears highly unlikely that one responsible for hiring a claimant would then discriminate on the basis of race in order to terminate that very same employee.  *Proud v. Stone*, 945 F.2d 796, 797-98 (4th Cir. 1991).

Generally, the "nonmoving party cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery or moved for a continuance to permit discovery before the district court ruled." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). Fed. R. Civ. P. 56(f) permits a court to deny summary judgment or grant a continuance when the nonmovant is able to demonstrate through affidavits that it could not effectively oppose summary judgment without a discovery period. *Id.* The Fourth Circuit, however, has made it clear that "a party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit." *Id.* (quoting *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995)). The party must file an affidavit that "particularly specifies legitimate needs." *Nguyen*, 44 F.3d at 242. The *Evans* Court refused to overturn a grant of summary judgment when the nonmovant "referred to her lack of discovery" in her opposition brief, but failed to file "any discovery requests, move[] for a continuance so she could conduct discovery, or file[] an affidavit as required by Rule 56(f)." *Evans*, 80 F.3d at 961.

Even if a party files a Rule 56(f) motion, a court will not allow discovery if the motion lacks specificity or fails to put forth why the party is unable to obtain information with which to oppose summary judgment. *See Morrow v. Farrell*, 187 F. Supp. 2d 548, 551 (D. Md. 2002) (denying a Rule 56(f) motion where the plaintiff makes "only generalized statements about disparate treatment . . . without specifying what discovery might be needed or pointing to specific facts that might merit further discovery"). In *Boyd v. Guiterrez*, which Savage inexplicably offers to support his position (*see* Pl.'s Opp. Mem. at 14,) the Fourth Circuit

13

concluded that a district court properly rejected a Rule 56(f) motion as a "fishing expedition," 2005 U.S. LEXIS 23770 (D. Md. 2005), since the motion "failed to identify any facts essential to [the nonmovant's] opposition that were not already available to him." 2007 WL 187797 (4th Cir. 2007).

Here, Savage has not filed a Rule 56(f) motion. Instead, he claims to base his pretext argument on documents "to be requested during discovery." (Pl.'s Opp. Mem. at 14.) Even if the court were to construe this phrase as requesting discovery for the underlying summary judgment motion, it completely lacks specificity as to what information is being sought and why. Therefore, because Savage has failed to provide any evidence that the County's termination of his employment was a pretext for racial discrimination, the court will grant summary judgment in favor of the County on the Title VII claim.

A separate order follows.

   October 29, 2007                                                  /s/
Date                                                        Catherine C. Blake
                                                                     United States District Judge